UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOE LOUIS COLEMAN, 03-B-1996,

                              Plaintiff,

v.                                                                04-CV-0761-JTC

SERGEANT RENOLDS, et al.,

                              Defendants.
_____

This case has been transferred to the undersigned by order of United States
Magistrate Judge H. Kenneth Schroeder.

Plaintiff Joseph Louis Coleman brings this action *pro se* seeking monetary relief
pursuant to 42 U.S.C. § 1983 based on allegations of deliberate indifference to his serious
medical needs and excessive force while he was incarcerated as a pretrial detainee at the
Erie County Holding Center ("ECHC").   *See* Item 1.   Pending for determination is
defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.   Item 130.   For the reasons that follow, this motion is granted and the case is
dismissed.

## BACKGROUND

Plaintiff has been incarcerated as a pretrial detainee at ECHC on several occasions.
He filed the complaint in this action on September 20, 2004, alleging in his "First Claim"
that at various times during periods of incarceration at ECHC in the years 2002 and 2003:

- "Defendant Nurse Amy" denied plaintiff physical therapy and recreation and
  interfered with his discussions with the Facility's doctor, knowing that he had

a bowel obstruction (which led to the development of acid reflux disease) as well as neuropathic pain from a spine injury (which required him to wear leg and back braces).

• "Defendant Dr. Todd" ignored plaintiff's requests for medical care regarding his bowel obstruction, acid reflux, and spine injury.

• "Defendant Doe Nurses" placed plaintiff in keeplock confinement for trying to seek medical attention.

• "Defendant Deputy Carebella" dragged plaintiff off the gym floor to prevent him from using a plastic chair to help him stand.

*See* Item 1, pp. 6-7.

In his "Second Claim," plaintiff alleged that at various times during periods of incarceration at ECHC in the years 1997, 2001, 2002 and 2003:

• "Defendant Sergeant Renolds" took plaintiff's walking cane from him, knowing that he suffered pain without it.

• "Defendant Nurse Niki" twice tried to give him Motrin, knowing that he was allergic to it.

• "Defendant Doe Nurse" gave plaintiff a Motrin, and stated to prison officials that plaintiff told her to "kiss [his] ass!"

*See id.* at 8.

By decision and order dated January 14, 2005, this court granted plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), but dismissed the complaint upon initial screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) for failure to state a claim upon which relief could be granted under Section 1983. *See* Item 3.

Dismissal was without prejudice to give plaintiff the opportunity to file an amended complaint alleging facts which, if proven, would show that defendants were deliberately indifferent to plaintiff's serious medical needs, or used excessive force against him, in violation of the Eighth Amendment to the United States Constitution. *Id.* at 3-7 & n. 1.

On April 13, 2005, plaintiff filed an amended complaint containing significantly expanded allegations in support of his two claims. *See* Item 10. In his amended First Claim, plaintiff alleged that on March 24, 2003, January 26, 1996, and February 1, 1997:

- "Defendant No. 1 Doe Nurse" deliberately gave plaintiff a Motrin knowing he was allergic to it, which caused him to become violently ill.

- Nurse Niki tried to give plaintiff a "pository," which he refused.

- Nurse Amy refused to give plaintiff leg braces; ignored his complaints of chest pain, swollen stomach, and constipation; provided erroneous medical information to facility's doctor, which resulted in a "life threat[en]ing embolism;" and, with other nurses, denied plaintiff recreation, which caused his food to back up and his stomach to swell.

- Deputy Carebella called other deputies (referred to as the "goon s[quad]") to have plaintiff dragged across the gymnasium floor an taken to solitary confinement.

Item 10, pp. 6-10.

In his amended Second Claim, plaintiff alleged that, on unspecified dates between December 1996 and March 1997, and on the specific date of December 12, 2003:

- Sergeant Renolds took plaintiff's walking cane from him, which caused him to lose his balance while he was being fingerprinted by "Deputy 357."

Sergeant Renolds took this action in retaliation for plaintiff's reporting that Renolds and "Deputy Gaven" were wearing swastikas on their arms as the inmates came back from Ramadan services.

• Doctor Todd failed to properly treat plaintiff's gastrointestinal problems.

• Nurse Amy tried to get a "big young Deputy" to attack plaintiff.

• Nurse Niki and other "Doe Nurses" tried to give him Motrin, knowing that he was allergic to it.

*Id.* at 13-18.

On June 21, 2005, this court entered an order finding that the amended complaint adequately alleged a serious medical need, and that deliberate indifference to that need could be inferred for the purposes of the screening required by 28 U.S.C. §§ 1915(e) and 1915A. Item 11, p. 1. However, the court also dismissed the amended complaint to the extent it raised claims related to events alleged to have occurred in 1996 and 1997, "well outside the statute of limitations," *id.*, and to the extent it raised any claims related to events alleged to have occurred in December 2003 when, according to Department of Correctional Services ("DOCS") records, plaintiff was in DOCS custody, and not in the custody of ECHC. *Id.* at 2. As a result of this determination, plaintiff's amended complaint was pared down to the allegations in the First Claim relating to events occurring on or about March 24, 2003 regarding Nurse Amy's alleged deliberate indifference to plaintiff's medical needs.

Subsequently, by order entered April 24, 2006, this court granted plaintiff's motion for leave to amend his pleading to correct the names of the individual defendants, as reflected in the disclosures required by the court's case management order (*see* Items 21,

-4-

23), as follows: (1) Sgt. Diane Renalds; (2) Nurse Amy MacKinnon; (3) Nurse Nkechi Ilogu; (4) Dep. Hernan Carabella; and (5) Dr. Todd Dunlap.  Item 33.

By order entered December 4, 2007, the court granted further leave to amend in order to add a new defendant, Craig Gadley, Sr., and to set forth allegations against him. Item 79.  Plaintiff's proposed Second Amended Complaint, received by the court on January 24, 2008, named not only Gadley but also Deputy Joseph Madden and Nurse Kathleen Davidson as additional defendants.  Plaintiff alleged in the First Claim of this pleading that, at some unspecified time between December 13, 2002 and July 30, 2003, Gadley snatched plaintiff's walking cane from him as he was being fingerprinted by Madden, and Madden pulled plaintiff's left hand across the unstable fingerprinting platform, causing plaintiff to lose his balance and fall to the floor.  In the Second Claim, plaintiff alleged that on November 16, 2002, defendant Carabella tried to make plaintiff get up from a mattress on the gym floor without his cane, and when plaintiff was unable to do so, Carabella and other deputies dragged plaintiff across the floor and into the basement to be placed in solitary confinement.  Plaintiff further alleged in the Second Claim that Kathleen Davidson is the Nurse in charge of dispensing medication to inmates at ECHC, and that Davidson deliberately gave Motrin to an unidentified "Doe Nurse" to dispense to plaintiff in order to make him sick; deliberately refused to give plaintiff the pain medication Dr. Dunlap had prescribed for him; and deliberately threw away plaintiff's medical request slips.  See Item 84.

On February 6, 2008, upon screening, the court entered a decision and order directing the Clerk of the Court to file this pleading as the second amended complaint, to be considered along with the amended complaint as the operative pleading in this action.

Item 83.  The court also determined that proposed defendant Kathleen Davidson "appears to be the proper name for defendant doe nurse in the first claim of plaintiff's amended complaint," *id.* at 2, and that the allegations regarding events on November 16, 2002 "appear repetitious of the allegations in plaintiff's amended complaint" (*id.*), which the court had previously dismissed as "well outside the statute of limitations."  Item 11, p. 1.

Subsequently, on December 29, 2008, plaintiff filed a motion (dated June 19, 2008) "to Reinstate Claim Under F.R.C.P. 7(b)."  Item 116.  In a decision and order entered May 28, 2009, the court denied this motion, construed as a request by plaintiff to reinstate his complaint in *Coleman v. Niki*, 00-CV-1032, a prior action brought by plaintiff in this court which was dismissed for failure to prosecute by order of Chief Judge Richard J. Arcara dated February 19, 2003.   The court also denied as moot plaintiff's request for reconsideration of the court's order in this action dismissing plaintiff's allegations relating to December 2003, finding that any mistake in that order was cured by the court's subsequent grant of leave to file a second amended complaint.  *See* Item 119.

As a result of these prior screenings, rulings, and proceedings, and reading the *pro se* plaintiff's operative pleadings and supporting papers liberally and interpreting them "to raise the strongest arguments that they suggest …," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), the court construes the claims remaining as viable in this action as follows:

- Deliberate indifference to plaintiff's medical needs, based on allegations that, on or about March 24, 2003, defendant Amy McKinnon refused to give plaintiff his leg braces, ignored his medical complaints, provided erroneous information to the facility's doctor, and denied plaintiff recreation; that

defendant Kathleen Davidson deliberately gave Motrin to an unidentified "Doe Nurse" to dispense to plaintiff in order to make him sick, deliberately refused to give plaintiff his prescribed pain medication, and deliberately threw away plaintiff's medical request slips; and, that defendant Todd Dunlap failed to properly treat plaintiff's gastrointestinal problems.

- Use of excessive force, based on allegations that, at some unspecified time between December 13, 2002 and July 30, 2003, defendant Gadley snatched plaintiff's walking cane from him as he was being fingerprinted by defendant Madden, and Madden pulled plaintiff's left hand across the unstable fingerprinting platform, causing plaintiff to lose his balance and fall to the floor.

Defendants move for summary judgment dismissing these claims, based on the following grounds:

1.  The claims remaining in this action are barred by application of the doctrine of *res judicata*.

2.  There are no genuine issues of material fact regarding the adequacy of the medical care provided to plaintiff during his periods of incarceration at ECHC, or the reasonableness of any force applied during fingerprinting.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I.      Summary Judgment

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011); Fed. R. Civ. P. 56, Committee's notes to 2010 amendments. Under those standards, the moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v.*

*Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011).  "An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981).  In considering whether the parties' respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court is also cognizant of its duty not only to liberally interpret *pro se* submissions, *see Burgos*, 14 F.3d at 790, but also to give *pro se* plaintiffs "extra consideration" and "special latitude on summary judgment motions."  *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)), *aff'd*, ___F. App'x___, 2008 WL 5083122 (2d Cir. 2008).  "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases), *quoted in Bennett*, 2006 WL 2794421, at *3.

## II.   *Res Judicata*

Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties, or those in privity with them, from relitigating claims that

were or could have been raised in that action.  *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."  *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted).  To show that a claim is precluded, a party must demonstrate that (1) the previous action involved an adjudication on the merits, (2) the previous action involved the same parties or those in privity, and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.  *See Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284-85 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000).

The submissions on file in this action reveal that plaintiff's complaint in *Coleman v. Niki*, 00-CV-1032, filed on 14, 2000, named as defendants "Holding Center Head Nurse Niki, Head of Medical Staff Jim, Unknown Members of the Medical Staff, Sergeant Renalds, Deputy Herman Carelbella, and Deputy Gaven."  Item 132-3, p. 2.  Broadly construed, plaintiff alleged in the "First Claim" of 00-CV-1032 that the following incidents occurred at ECHC on July 29, 2000 and August 18, 2000:

- An unknown deputy, identified as "J.J.N. 357," pulled on plaintiff's hand while fingerprinting him, causing plaintiff to fall on his behind, and then refused to take plaintiff to the hospital.

- Unknown members of the ECHC medical staff poisoned plaintiff by giving him "unprescribed drugs."

- An unknown deputy refused to allow plaintiff outside of his keep-locked cell for an extra half-hour, despite knowing that plaintiff was very sick and was having difficulty breathing.

Item 132-2, pp. 8-9.  In his "Second Claim," plaintiff alleged that "around 8/15/00 and 8/18/00:"

- Deputy Jim instigated an argument with plaintiff to prevent him from seeking medical help.

- Nurse Niki tried to give plaintiff a Motrin, knowing that he was allergic to it; tried to give him a "pository" while he was violently sick and lying face down on the floor in his own vomit; and refused to provide further medical treatment.

- Sergeant Carabella had plaintiff dragged off the gym floor when he was unable to get up because Sergeant Renalds had confiscated his walking cane after wrongly accusing plaintiff of using the case as a weapon.

- Deputy Gaven allowed another inmate to attack plaintiff, resulting in injury to his back.

*Id.* at 10-11.

By decision and order dated January 9, 2001, upon screening the complaint pursuant to Sections 1915(e) and 1915A, the court dismissed with prejudice plaintiff's claim against Deputy J.J.N., as a negligence claim against government officials, not cognizable under Section 1983; dismissed with prejudice plaintiff's claim that he was poisoned by

unknown staff members, as "that type of fanciful, fantastic, and delusional claim that is frivolous as a matter of law …;" dismissed with prejudice plaintiff's claim that an unknown deputy refused to release him from keeplock for an extra half-hour in the mornings and evenings, based on plaintiff's allegation that prison officials had acted promptly to remedy the situation; and dismissed with prejudice plaintiff's claim that Deputy Jim argued with him about seeking medical treatment, finding the allegations insufficient to demonstrate Jim's personal involvement in the alleged constitutional deprivation.  *See* Item 132-3, pp. 4-7. The court allowed plaintiff to proceed on the following claims:

- Nurse Niki failed to provide plaintiff with adequate medical treatment.

- Deputy Carabella had plaintiff dragged across the gym floor.

- Sergeant Renalds wrongfully deprived plaintiff of his walking cane.

- Deputy Gaven directed another inmate to assault plaintiff.

*Id.* at 6-8.

Subsequently, on January 29, 2003, Magistrate Judge Schroeder issued a report and recommendation in 00-CV-1032, detailing plaintiff's repeated failures to appear for scheduled conferences; failure to keep the court apprised of his whereabouts; failure to accept certified mail from defendants; failure to respond to defendants' motion to dismiss the action; and failure to otherwise demonstrate any interest in litigating his claims.  *See* Item 132-4.  Based upon these circumstances, and considering the factors outlined by the Second Circuit in *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988), and other cases, Judge Schroeder recommended that the complaint be dismissed for failure to prosecute.  *Id.*  This recommendation was adopted by Chief Judge

Arcara on February 19, 2003 (Item 132-5), and the Clerk of the Court entered judgment on February 20, 2003, dismissing *Coleman v. Niki*, 00-CV-1032.  Item 132-6.

It is well settled that dismissal of an action for failure to prosecute operates as an adjudication on the merits for *res judicata* purposes.  *See Harry v. Rodriguez*, 337 F. App'x 17, 18 (2d Cir. 2009); *see also Faggiano v. Eastman Kodak Co.*, 378 F. Supp. 2d 292, 301-02 (W.D.N.Y. 2005) (citing cases); *Baldwin v. Marshall & Ilsley Fin. Corp.*, 2011 WL 7499434, *6 (S.D.Ohio Nov. 23, 2011) (citing *Costello v. United States*, 365 U.S. 265, 286 (1961)),  *report and recommendation adopted*, 2012 WL 869289 (S.D.Ohio 2012). Accordingly, the court finds that Judge Arcara's dismissal of the complaint in 00-CV-1032 for failure to prosecute involved an adjudication on the merits of the claims remaining as viable in that action, specifically:

(1)     That defendant Ilogu ("Nurse Niki") failed to provide plaintiff with adequate medical treatment;

(2)     That defendant Carabella had plaintiff dragged across the gym floor;

(3)     That defendant Renalds wrongfully deprived plaintiff of his walking cane; and

(4)     That defendant Gaven directed another inmate to assault plaintiff.

*See* Item 132-3, pp. 6-8.

The court's review of the submissions on file also makes it clear that this adjudication is entitled to preclusive effect with respect to any claims that could be construed as remaining viable in this action against defendants Renalds, Carabella, Madden, Gadley, and Ilogu.  In this regard, defendants have submitted portions of the

transcript of plaintiff's deposition taken in the prior action (00-CV-1032) on June 11, 2002.[1]

Plaintiff's testimony at that time is summarized here as follows:

- When plaintiff was incarcerated at ECHC in 2000, medical staff refused to give him his prescribed medications; refused to provide a leg and back brace; and refused to allow him to go to recreation.  T1 at 41-54.

- Upon intake at ECHC in January 1996, Sergeant Renalds confiscated plaintiff's walking cane on the ground that it presented a security risk. Sergeant Renalds was not involved in any of the incidents alleged to have taken place after July 2000.  T1 at 54-55.

- Nurse Niki gave plaintiff Motrin; he became violently ill, and was lying face down on the floor of his cell in his own vomit, whereupon Nurse Niki tried to give him a suppository.  T1 at 62-75.

- In 1996, following intake, plaintiff was housed in the ECHC gymnasium without his cane or his leg and back braces, and was using a plastic chair to get up and down.   Deputy Carabella had plaintiff dragged off the floor by a "goon squad" of deputies after telling plaintiff that medical staff claimed he was faking his injuries.  T1 at 79-83.

- Also in 1996, Deputy Gaven refused to "call" plaintiff's medication, and directed his inmate trustee, Johnny White, to harass plaintiff.  T1 at 83-84.

---

[1]A copy of portions of this transcript is submitted as Exhibit F to the affidavit of David J. Sleight, Esq. (Item 132), docketed as Item 132-7.  Numerical references in the text preceded by "T1" are to pages of this transcript.

- The only incident that took place in or around July and August 2000 involved Nurse Niki giving plaintiff Motrin.  T1 at 85-89.

The record also contains the transcript of plaintiff's deposition in this action (04-CV-761), taken on July 25, 2008.[2]  Plaintiff's testimony at that time is summarized here as follows:

- Somewhere around December 2002, Sergeant Renalds instructed "Fred Gadley" to take plaintiff's walking cane from him as he was being fingerprinted upon intake at ECHC following revocation of his bail.  T2 at 3-5.

- Deputy Madden pulled on plaintiff's hand while he was fingerprinting him, causing him to lose his balance and fall on his buttocks.  T2 at 5-8.  Although he has been fingerprinted at ECHC several times, this was the only time a deputy caused him to lose his balance and fall by pulling on his hand.  T2 at 11-14.

- Deputy Carabella had plaintiff dragged off the gym floor and placed in isolation because he was using a chair to get himself up and down.  T2 at 14-17.

- Deputy Madden was instructed by Sergeant Renalds to take plaintiff's walking cane from him.  T2 at 18.

- Plaintiff was given Motrin by a nurse, who told Sergeant Logal [sic] that the nurse claimed plaintiff was belligerent toward her.  T2 at 18.

_____

[2]A copy of this transcript is submitted as Exhibit G to the Sleight Affidavit, docketed as Item 132-8. Numerical references in the text preceded by "T2" are to pages of this transcript.

- In February 2003, Dr. Roland put a foreign substance in plaintiff's blood, causing an embolism in his left leg.  T2 at 18-21.

- In or around March 24, 2003, Nurse Niki and Nurse Davidson tried to give plaintiff Motrin on three occasions, but he refused to take it.  T2 at 26-30.

- The incident in which plaintiff became violently ill after he was given Motrin, and Nurse Niki tried to give him a suppository, took place in 1996 or 1997.  T2 at 30-35, 39.

As this examination of the record reveals, there can be no question that the claims adjudicated in 00-CV-1032 involved the same claims asserted in the operative amended pleading forming the basis for this action.  Clearly, Sergeant Renalds, Deputy Carabella, and Nurse Ilogu are named as defendants in both actions.  Moreover, considering plaintiff's deposition testimony in both actions, and comparing the allegations comprising the claims adjudicated in the first action to the allegations comprising the claims remaining viable in this action, it becomes clear that Nurse Davidson and Nurse MacKinnon are the "Unknown Members of the Medical Staff" (or "Doe Nurses") alleged in the first action to have poisoned plaintiff by giving him Motrin or some other "unprescribed drugs," and that Deputy Gadley and Deputy Madden are the "unknown deputies" alleged in the first action to have caused plaintiff to fall while being fingerprinted during intake at ECHC.

Furthermore, the court's examination of the entire record also reveals that the claims remaining as viable in the operative pleading in this action involve the same "nucleus of operative fact" as the claims adjudicated in the first suit.  *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997) (internal quotation omitted).  As explained by the Second Circuit, this determination depends on whether " 'the transaction or connected

series of transactions at issue in both suits is the same, that is, where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first.' " *Id.* at 91 (quoting *Securities and Exch. Comm'n v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997) (internal quotations and citations omitted)).  However, "the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit.  It is instead enough that 'the facts essential to the second were [already] present in the first.' "  *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997), *cert. denied*, 523 U.S. 1106 (1998)).  As outlined at some length in the discussion above, even though plaintiff may not have consistently or correctly identified all of the ECHC medical staff and deputies alleged to have been involved in the incidents complained of, it is clear to the court that the facts alleged in support of the claims remaining viable in this action – namely, that Deputies Madden and Gadley caused plaintiff to fall while fingerprinting him; that Nurses "Niki" Ilogu and Kathleen Davidson deliberately attempted to slip plaintiff Motrin; that Nurse Amy MacKinnon denied plaintiff medical care and withheld his prescription medications; and that "Dr. Todd" failed to properly treat plaintiff's gastrointestinal problems –  stem from the same "transactions or series of transactions" which formed the basis for his initial suit.

Based on this analysis, the court finds that all of the claims asserted in this action (*Coleman v. Renolds*, 04-CV-761) involved the same parties or those in privity with the parties to the prior action (*Coleman v. Niki*, 00-CV-1032); that the same evidence would be needed to support the claims raised in both actions; that the facts essential to the

second suit were present in the first; and that all of the claims asserted in the subsequent action were, or could have been, raised in the prior action. Accordingly, this court's adjudication on the merits of plaintiff's claims in his prior suit is entitled to  be given *res judicata* effect precluding plaintiff from raising those same claims in this action.

## III.    42 U.S.C. § 1983

Even if the operative pleading could be construed to raise viable claims which are not barred by application of the *res judicata* doctrine, the court's review of the summary judgment record reveals that plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial with respect to any claims for relief under 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

**Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.  "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Kasiem v. Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. Sept. 16, 2011).

As indicated above, the court has liberally construed the operative pleadings in this action to raise claims for deprivation of plaintiff's right secured by the Eighth Amendment to be free from cruel and unusual punishments, based on allegations of deliberate indifference to serious medical needs and use of excessive force. These claims are discussed in turn.

### A.      Deliberate Indifference to Serious Medical Needs

In the operative amended pleading, plaintiff alleges that, on or about March 24, 2003, defendant McKinnon refused to give plaintiff his leg braces, ignored his medical complaints, provided erroneous information to the facility's doctor, and denied recreation; that defendant Davidson deliberately gave Motrin to an unidentified "Doe Nurse" to dispense to plaintiff in order to make him sick, deliberately refused to give plaintiff his prescribed pain medication, and deliberately threw away plaintiff's medical request slips; and, that defendant "Dr. Todd" failed to properly treat plaintiff's gastrointestinal problems.

To show that the medical care at ECHC was so inadequate as to amount to "cruel or unusual punishments" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard requires plaintiff to show both (1) that the alleged deprivation is objectively "sufficiently serious," and (2) that, subjectively, the defendant acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995).

With regard to the objective element, courts consider all relevant facts and circumstances to determine whether a medical condition is "sufficiently serious" under this standard, including "whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; … the severity and persistence of pain …," *Sanchez v. Wright*, 2012 WL 528578, at *6 (W.D.N.Y. Feb. 17, 2012) (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)), and "the actual medical consequences that flow from the alleged denial of care."  *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).  A serious medical condition exists where failing to treat a prisoner's condition could cause further significant injury or the unnecessary and wanton infliction of pain.  *Chance*, 143 F.3d at 702; *see also Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("[T]he alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.").  At the same time, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment."  *Livingston v. Goord*, 225 F. Supp. 2d 321, 329 (W.D.N.Y. 2002).

As reflected in the affidavit of Edwin Heidelberger, M.D., Ph.D., Chief Medical Officer for the County of Erie Department of Health, plaintiff's primary medical ailments are chronic back and leg pain secondary to a gunshot wound suffered in 1990, and he also apparently suffers from hypertension, mental illness, and occasional constipation and acid reflux (Item 133, at 2).  Even considering the combined effects of these ailments, there is nothing in the medical evidence presented upon which a rational jury could find that

plaintiff's condition at any time during the periods of his incarceration at ECHC was sufficiently serious, painful, or medically urgent, or that the failure to treat his condition could have resulted in further significant injury or the unnecessary and wanton infliction of pain, to satisfy the objective prong of the deliberate indifference test under the Eighth Amendment.   Rather, ECHC medical records show – and plaintiff has acknowledged throughout the course of his pleadings and deposition testimony – that plaintiff received frequent evaluation and treatment by the medical staff for his medical complaints.  *See* Items 133-2 and 133-3.  These records also clearly indicate that the medical staff routinely administered both prescription and over-the-counter pain medicine on an as-needed basis, and there is no showing that these medications were ever deliberately withheld or that any failure to provide treatment worsened plaintiff's condition or caused him extreme pain.

With regard to the subjective component of plaintiff's deliberate indifference claim, the court must consider whether the evidence in the record can support a finding that ECHC medical staff acted  with a sufficiently culpable state of mind.   *Hathaway*, 37 F.3d at 66.  As noted by the Second Circuit in *Hathaway*:

> Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm ....  More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id.* at 66–67 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "To establish deliberate indifference, therefore, plaintiff must prove that the defendant had a culpable

state of mind and intended wantonly to inflict pain." *Evan v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).

There is no evidence in the record on summary judgment to support a finding that any ECHC staff member intended to cause plaintiff to suffer unnecessary pain.  As reflected in Dr. Heidelberger's affidavit and attached medical records, plaintiff regularly and promptly received treatment whenever he requested medical attention.  He was seen in a timely manner and, as appropriate, was prescribed and administered medication.  Based on this evidence, no reasonable jury could conclude that ECHC medical staff knew of but deliberately disregarded a serious risk to plaintiff's health, with the intent to cause him pain.

### B.    Excessive Force

As outlined above, plaintiff's remaining excessive force claim is based on the allegation that, at some unspecified time between December 13, 2002 and July 30, 2003, defendant Gadley confiscated  plaintiff's walking cane from him as he was being fingerprinted by defendant Madden, and Madden pulled plaintiff's left hand across the unstable fingerprinting platform, causing plaintiff to lose his balance and fall to the floor.

The Eighth Amendment's prohibition against cruel and unusual punishments also applies to claims by prison inmates that they were subjected to excessive force by prison employees  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Whitley v. Albers*, 475 U.S. 312, 318–26 (1986)). Like a claim of deliberate indifference, an Eighth Amendment excessive force claim has two elements– "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright*, 554 F.3d at 268 (citing *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992)).

The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct."  *Wright*, 554 F.3d at 268 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).  The "wantonness" inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7.

Plaintiff's allegations falls far short of the showing necessary to satisfy the subjective element of an excessive force claim.  Assuming as true the facts and circumstances alleged regarding defendants' conduct during the fingerprinting incident, it is clear that this type of conduct was rationally related to legitimate institutional security objectives.  Plaintiff acknowledged that the deputies confiscated his cane for safety purposes, and that he lost his balance during fingerprinting at least partly because the fingerprinting platform was shaky and he did not have his cane for support.  While the circumstances as alleged suggest that the intake deputies could have been more careful in helping plaintiff maintain his stability during the procedure, there is nothing in the record before the court to support a finding that Deputy Madden pulled plaintiff's left hand across the unstable fingerprinting platform with force intended to maliciously and sadistically cause plaintiff harm.

For these reasons, no rational jury could find in favor of plaintiff on his claims that prison deputies and medical staff at ECHC were deliberately indifferent to his serious medical needs, or used excessive force against him, in violation of the right to be free from cruel and unusual punishments secured by the Eighth Amendment.

## **CONCLUSION**

Based on the foregoing analysis, and having drawn all reasonable inferences in the plaintiff's favor, the court finds that there is no genuine issue of material fact to be tried in this action, and defendants are entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(a), dismissing the case in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendants.

The court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:    6/22                    , 2012
p:\pending\2004\\04-761.jun1.2012

-24-